**Boyd L. SORENSON,**
**Plaintiff–Appellant,**

v.

**Otis R. BOWEN, M.D., Secretary of**
**Health and Human Services,**
**Defendant–Appellee.**

**No. 89–4002.**

United States Court of Appeals,
Tenth Circuit.

Nov. 1, 1989.

Clella Lawrence, Provo, Utah (Michael E. Bulson, Ogden, Utah, with her on the brief), of Utah Legal Services, Inc., for plaintiff-appellant.

Deana Rosemarie Ertl–Lombardi, Asst. Regional Counsel, Dept. of Health and Human Services, Denver, Colo. (Dee V. Benson, U.S. Atty., Richard D. Parry, Asst. U.S. Atty., Salt Lake City, Utah, [Ronald S. Luedemann, Chief Counsel, Thomas A. Nelson, Jr., Deputy Chief Counsel, Dept. of Health and Human Services, Denver, Colo., of counsel] with her on the brief) for defendant-appellee.

Before LOGAN, SETH and MOORE, Circuit Judges.

PER CURIAM.

This matter comes to us on appeal from the district court, which affirmed denial of Boyd L. Sorenson's application for social security benefits. *Sorenson v. Bowen*, 709 F.Supp. 1045 (D.Utah 1988). The issue on appeal is whether the appeals council's decision was supported by substantial evidence. We conclude that it was not and reverse with instructions to award benefits to Sorenson as of the date of the commencement of his disability.

At the time Sorenson applied for benefits, he was forty-three years old and had worked for nearly twenty years as a drywall finisher. He had a documented medical history of gradually more debilitating asthma, interstitial fibrosis, chronic obstructive pulmonary disease, and emphysema. Starting November 1, 1984, he was unable to continue work as a drywaller because of the severity of his respiratory problems. He is also completely illiterate and is mildly retarded.

Sorenson applied for social security disability income benefits in January, 1985, under Title II, the disability insurance provisions of the Social Security Act, 42 U.S.C. §§ 401–33 (1982 & Supp. IV 1986), and Title XVI, the supplemental security income program, 42 U.S.C. §§ 1381–83c (1982 & Supp. IV 1986). His application was denied, as was his request for reconsideration. After obtaining legal assistance, he requested and received a hearing before an administrative law judge (ALJ), held May 15, 1986. To support his application, he submitted the opinion of his treating physician that he is completely disabled. The treating physician stated that Sorenson has severe exertional impairments, created by his respiratory problems, as well as nonexertional impairments. He stated that Sorenson is incapable of working around dust, fumes, smoke, and variations in temperature. He also noted Sorenson's level of intellectual functioning, another nonexertional impairment. Sorenson's treating physician's opinion was supported by ten years of observation as Sorenson's personal physician, as well as blood gas studies and exertional (pulmonary function) studies which showed a one-minute forced expiratory value (FEV or $FEV_1$.) of 1.95 liters before use of his bronchodilator (53% of normal capacity), and 2.21 liters after its use (61% of normal). A second pulmonary function test conducted a month later yielded an FEV of 1.279 (34% of normal) and a maximum voluntary ventilation in liters per minute (MVV) of 37 before bronchodilator use, and an FEV of

1.961 (53% of normal), with an MVV of 57 after such use.[1] The therapists conducting these tests noted that Sorenson had made a good effort, and that the tests revealed severe obstructive air flow limitations. Sorenson also submitted x-rays taken in January, 1985, which showed mild obstructive pulmonary disease. Sorenson testified in person at the hearing, corroborating his treating physician's opinion.

In response to this evidence, the ALJ concluded that Sorenson was in the category of a "younger man," was restricted to sedentary work,[2] and was severely impaired, but that, because he had not dropped out of school until tenth grade, he was functionally literate. The ALJ then relied on the medical-vocational guidelines (grids).[3] Applying 20 C.F.R., pt. 404, subpt. P, app. 2, table 1, rule 201.19 (1988), the ALJ arrived at the conclusion that Sorenson is not disabled and therefore is not entitled to benefits. In summary, the ALJ found that Sorenson is severely restricted physically and assumed Sorenson to be literate. Under the regulations, with this combination, Sorenson could retrain to work in a sedentary job.

The ALJ filed his conclusion on June 10, 1986. Less than thirty days later, on July 9, 1986, Sorenson requested appeals council review of the determination. Sorenson complained that the ALJ should have applied table 1, rule 201.17 of the grids because Sorenson is not only physically disabled, he is also illiterate. Sorenson contested the ALJ's conclusion that completion of ninth grade is proof of literacy. Sorenson submitted a psychological report which indicated that his intelligence quotient is seventy-three and his memory quotient is sixty-five, as well as an affidavit describing the policies and practices of automatic student promotion in the school district Sorenson attended. The psychologist who exam-

---

1. Sorenson argues that he should have been granted disability benefits based solely on his respiratory impairment. *See* 20 C.F.R. § 404.1520(d) (1988): "If you have an impairment(s) which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience." Sorenson's second pre-bronchodilator score falls below the minimum levels for a man of Sorenson's height, 67 inches, pursuant to the table for chronic pulmonary insufficiency, 20 C.F.R., pt. 404, subpt. P, app. 1, § 3.02 A (1988): MVV equal to or less than 52 and FEV equal to or less than 1.3. His test results immediately after medication with the bronchodilator are slightly above the minimums. Subsequent tests to determine how long the medication was effective were not conducted.

20 C.F.R., pt. 404, subpt. P, app. 1, § 3.00 D (1988) provides:

These studies should be repeated after administration of a nebulized bronchodilator unless the prebronchodilator values are 80 percent or more of predicted normal values or the use of bronchodilators is contraindicated. The values in tables I and II assume that the ventilatory function studies were not performed in the presence of wheezing or other evidence of bronchospasm or, if these were present at the time of the examination, that the studies were repeated after administration of a bronchodilator. Ventilatory function studies performed in the presence of bronchospasm, without use of bronchodilators, cannot be found to meet the requisite level of severity in tables I and II.

The Secretary maintains that this regulation mandates the use of results under medication for the purpose of establishing or ruling out a qualifying impairment. Because of our holding that Sorenson is disabled under 20 C.F.R., pt. 404, subpt. P, app. 2, table 1, rule 201.17 (1988), we do not address the issue of whether or not the requisite level of disability from respiratory impairments for per se award of benefits must be measured by performance after pharmacological enhancement.

2. 20 C.F.R. § 404.1567(a) (1988) defines sedentary work as,

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

3. [The grids] relate a claimant's age, educational background, and work experience to ability to engage in work in the national economy at various levels of exertion (sedentary, light, medium, heavy and very heavy). If the Secretary can determine that an individual claimant precisely fits on the grids, the Secretary can use the grids to decide whether the claimant is able to do other work and is therefore not disabled.

*Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir.1987).

ined Sorenson confirmed that he is completely illiterate.

On September 5, 1986, eighty-five days after the ALJ decision was filed, the appeals council notified Sorenson that it would review the ALJ decision. In the notice, the appeals council conceded that Sorenson is illiterate, but also notified Sorenson of its intent to reverse the ALJ's finding that Sorenson is restricted to sedentary level work. The appeals council stated that its review of the evidence convinced it that Sorenson is capable of medium work.[4] The appeals council relied on residual functional capacity (RFC)[5] assessment forms by which two reviewing physicians interpreted Sorenson's respiratory test results, without the benefit of examining Sorenson. Both reviewing physicians checked the boxes on the form to indicate that Sorenson is capable of performing medium work.[6] Under table 3, rule 203.25 of the grids, although a younger individual is illiterate, if he or she is capable of medium work, that person is not considered disabled and is not eligible for benefits. Sorenson was given twenty days to supplement the record with additional evidence. His attorney responded by letter with a recapitulation of the evidence which had been submitted previously. On December 15, 1986, the appeals council issued its decision. As foreshadowed by its September letter, it found that Sorenson, although illiterate, was physically capable of medium work, and therefore denied him benefits. The appeals council relied on the two reviewing physicians' RFC forms and the post-bronchodilator test results. The appeals council expressed confidence in this evidence, stating that respiratory function-ing was readily susceptible to mechanical application of test results to residual functional capacity. It challenged the credibility of the treating physician's opinion, as well as its underlying evidentiary support. It ignored Sorenson's testimony at the ALJ hearing, as well as the implication of the ALJ's acceptance of the credibility of that testimony.

Sorenson appealed the appeals council's decision to the district court, noting that the appeals council was time-barred from expanding the scope of review beyond the issue of Sorenson's literacy, and that the council improperly weighted the opinion of the reviewing physicians, who had never examined Sorenson, over that of the treating physician, even though Sorenson's treating physician's opinion was supported by clinical evidence and a decade of personal observation and examinations and was corroborated by Sorenson's testimony at the ALJ hearing.

The case was referred to a magistrate for a report and recommendation. The magistrate recommended reversal of the appeals council's decision denying benefits, based on Sorenson's argument that appeals council's review of Sorenson's residual functional capacity was time-barred.

However, on *de novo* review the district court affirmed the appeals council. The district court recognized that the ALJ would have found Sorenson disabled had it found him to be illiterate. Therefore, it reviewed the appeals council decision as a reversal of the ALJ decision, mandating heightened scrutiny under *Fierro v. Bowen*, 798 F.2d 1351 (10th Cir.1986), *cert. denied*, 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 789 (1987). *Sorenson*, 709 F.Supp.

---

**4.** 20 C.F.R. § 404.1567(c) (1988) defines medium work as, "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."

**5.** Residual functional capacity is defined as "the maximum degree to which the individual retains the capacity for *sustained* performance of the physical-mental requirements of jobs." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(c) (emphasis added).

**6.** The reviewing physicians' responses on these forms reported that Sorenson could lift and carry fifty pounds, stand and walk for six hours of an eight-hour work day, sit a total of six hours in an eight-hour work day, and push or pull an unlimited amount. They stated that he had environmental limitations. Unfortunately, those limitations are written, not just checked off on the form, and they are nearly illegible. They seem to state: "avoid pulmonary irritants." Both of the reviewing physicians' signatures are also illegible, and so it is impossible for anyone to determine whether they were qualified to review respiratory functioning test results. Record, V. II at 73–74, 94–95.

at 1049. Under this standard of review, the district court found that Sorenson's treating physician's testimony was overcome by the reviewing physicians' evaluations, under the reasoning of *Garrison v. Heckler*, 765 F.2d 710, 713–14, 715 (7th Cir.1985) (pulmonary function tests' results can be stated in precise terms and can be analyzed by physicians with experience in reading such results with more reliable conclusions than those of a general practitioner/treating physician). *Sorenson*, 709 F.Supp. at 1049–50. The *Sorenson* district court went on to criticize the opinion of Sorenson's treating physician as mere general observations supported by insufficient clinical evidence. *Id.* at 1050. Sorenson appealed to this court.

The Tenth Circuit has had many opportunities to review the basic structure of the social security administration's evaluation of an application for benefits. For example,

> The Secretary uses a five-step process to evaluate disability claims for supplemental security income. 20 C.F.R. § 416.920. If the Secretary finds that a person is disabled or not disabled at any point, the review ends. Briefly, the five steps are as follows: (1) A person who is working is not disabled. (2) A person who does not have an impairment or combination of impairments severe enough to limit the ability to do basic work activities is not disabled. (3) A person whose impairment meets or equals one of the impairments listed in the regulations is conclusively presumed to be disabled. (4) A person who is able to perform work she has done in the past is not disabled. (5) A person whose impairment precludes performance of past work is disabled unless the Secretary demonstrates that the person can perform other work. Factors to be considered are age, education, past work experience, and residual functional capacity. The Secretary may, in appropriate circumstances, use the Medical Vocational Guidelines (Grids) to determine whether other work exists that a claimant could perform.

*Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir.1988) (citing *Bowen v. Yuckert*, 482 U.S. 137, 140–42, 107 S.Ct. 2287, 2290–91, 96 L.Ed.2d 119 (1987); other citations omitted).

The shifting burden of proof in such cases is described in *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir.1989):

> In a social security hearing such as this one, the claimant bears the burden of proving a disability, as defined by the Social Security Act, that prevents him from engaging in his prior work activity. Once the claimant has established a disability, the burden shifts to the Secretary to show that the claimant retains the ability to do other work activity and that jobs the claimant could perform exist in the national economy. The Secretary meets this burden if the decision is supported by substantial evidence. "Substantial evidence" requires "more than a scintilla, but less than a preponderance," and is satisfied by "such evidence that a reasonable mind might accept to support the conclusion." The determination of whether substantial evidence supports the Secretary's decision is not simply a "quantitative exercise," for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.

(citations omitted). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. National Labor Relations Bd.*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987); *see generally Gossett v. Bowen*, 862 F.2d 802, 804–05 (10th Cir.1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir.1988).

■ Our review of social security administration cases is usually quite limited. "The Secretary's decision must be sustained if supported by substantial evidence. The reviewing court does not weigh the evidence and may not substitute its discre-

tion for that of the agency." *Cagle v. Califano,* 638 F.2d 219, 220 (10th Cir.1981) (citations omitted); *see also Jordan v. Heckler,* 835 F.2d 1314, 1316 (10th Cir. 1987). However, the district court was correct in utilizing a heightened scrutiny standard.

> [W]here the Secretary, acting through the Appeals Council, overturns a decision of the ALJ granting benefits, and, in so doing, differs with the ALJ's assessment of witness credibility, the Secretary should fully articulate his reasons for so doing, and then, with heightened scrutiny, we must decide whether such reasons find support in the record.

*Fierro,* 798 F.2d at 1355; *see also Williams,* 844 F.2d at 754. The ALJ would have granted benefits had he found Sorenson illiterate. The appeals council conceded him to be illiterate. The appeals council then rejected Sorenson's testimony, as well as the opinion of his treating physician, to overrule the ALJ's opinion that Sorenson is restricted to sedentary work. This is tantamount to reversal of the ALJ, and we will use the heightened scrutiny standard.

The district court was persuaded by the Seventh Circuit's opinion in *Garrison,* 765 F.2d 710, which urges reliance on the mathematical results of pulmonary function studies as interpreted by reviewing physicians. *Sorenson,* 709 F.Supp. at 1049–50. The *Garrison* court expressed more confidence in such reviewing physicians' opinions than in the opinions of treating physicians. *Garrison,* 765 F.2d at 713. On this issue, the Seventh Circuit is not in harmony with the Tenth Circuit.

■ " '[T]he Secretary must give substantial weight to the evidence and opinion of the claimant's treating physician, unless good cause is shown for rejecting it.' However, a treating physician's opinion may be rejected if the Secretary gives specific, legitimate reasons for doing so." *Eggleston v. Bowen,* 851 F.2d 1244, 1246 (10th Cir.1988) (citations omitted). Opinions of physicians

> who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians

employed and paid by the government for the purpose of defending against a disability claim.

*Broadbent v. Harris,* 698 F.2d 407, 412 (10th Cir.1983) (quoting *Allen v. Califano,* 613 F.2d 139 (6th Cir.1980)). "The reports of *reviewing* physicians are ... accorded less weight than those of *examining* physicians." *Talbot,* 814 F.2d at 1463; *see also Gatson v. Bowen,* 838 F.2d 442, 448 (10th Cir.1988) ("suspect reliability" of RFC forms when filled out without explanation of the basis for the conclusions and without evidence of any examination of the claimant); *Gossett,* 862 F.2d at 807 (opinions of treating physicians accorded great weight); *Williams,* 844 F.2d at 758 (same).

■ Even the *Garrison* court was clear as to the essential test for weighing the value of a treating physician's opinion. A court must examine whether and to what extent the opinion discusses "how particular medical impairments produce reductions in physical exertion, and how such reductions in exertion affect the ability to work." *Garrison,* 765 F.2d at 713.

The appeals council found:

5. The claimant has the residual functional capacity to perform the exertional and nonexertional requirements of work except for heavy lifting in excess of 50 pounds, reading, writing and complex tasks.

. . . .

7. The claimant has the residual functional capacity for a full range of medium work which does not involve reading, writing and complex tasks.

. . . .

11. Based on the claimant's exertional limitations only, section 404.1569 and 416.969 and Rules 203.26 and 203.27, Table No. 3 of Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion that the claimant, considering his residual functional capacity, age, education and work experience, was not disabled.

. . . .

12. The claimant's nonexertional limitations did not significantly affect her [sic] residual functional capacity for medium work and, therefore, considering that ca-

pacity within the framework of the above rules, the claimant is not disabled.

Record, V. II at 8. To support these findings, the appeals council stated:

This conclusion is based on pulmonary function studies performed on January 23, 1985 showing a $FEV_1$ of 2.2 (Exhibit 20), pulmonary function studies dated February 2, 1985 showing a $FEV_1$ of 1.9 and MVV of 57, chest x-rays dated January 2, 1985 showing evidence of mild obstructive pulmonary disease, and an exercise report dated February 26, 1985 showing a PACO2 of 35.7 and a PAO2 of 71 (Exhibit 21).

Id. at 6. The reasons the appeals council rejected Sorenson's treating physician's opinion were, therefore, specific. However, they were not legitimate, because these raw results do not overcome the weight of the testimony and evidence submitted on Sorenson's behalf.

The appeals council ignored evidence concerning Sorenson's nonexertional limitations. The treating physician noted that Sorenson was limited to jobs in environments free of dust, fumes, smoke, and variations in temperature. This recommendation was echoed by the notes written by both reviewing physicians that Sorenson should avoid pulmonary irritants. "Residual functional capacity primarily measures a claimant's exertional capacity, or in simplest terms, his strength. Nonexertional limitations ... may also limit an individual's capacity to work, such that he may not be able to perform the full range of work available within an RFC category." Ray, 865 F.2d at 225 (citation omitted); see 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e) (1988); see also Gossett, 862 F.2d at 807;

Williams, 844 F.2d at 752; Talbot, 814 F.2d at 1460.

In addition, it is troubling that the appeals council ignored the ALJ's implication of the credibility of Sorenson's testimony that he is restricted to sedentary work.[7] "We give great deference to the ALJ's determination of plaintiff's credibility." Fowler, 876 F.2d at 1455. This first-person testimony was buttressed in the record before the appeals council by the observations of D. Logan, social security claims representative, dated June 4, 1985:

Wife read forms but he signed his name ok. He hardly said anything throughout our time together. Wife answered questions, although he comprehended ok. (I don't consider her pushy or aggressive— its just that Mr. Sorenson is very helpless.) She said he's very shy. I would consider him dependent on his wife.... He's unusually quiet. Quite thin physically.

Record, V. II at 128.[8]

In the area of Sorenson's intellectual functional capacity, the examining psychologist stated that, "His ability level falls in at the lower end of the borderline intellectual category. He is significantly limited in his memory skills, especially in visual recall and in recall of multiple elements." Id. at 155.

These independent pieces of evidence all support Sorenson's treating physician's opinion:

Boyd [Sorenson] is capable of sitting without shortness of breath, he can also stand in one spot without shortness of breath. Walking greater than 20 yds. causes pallor, cyanosis, tachycardia and

---

**7.** Sorenson testified before the ALJ that he tried to work as a drywaller for four days in mid-1985, but could not do the work physically. His lungs gave out on him and he went to bed for a week. Record, V. II. at 44–45. He can walk a block without resting. Id. at 46. He can lift fifty pounds but could only carry it ten feet. He gets tired after standing. Id. at 47. When he takes his medication, it helps "a little bit." Id. at 48. He was on medication when he quit working. Id. at 49. He feels the need to rest after about fifteen minutes of activity. Id. at 65.

A statement by Sorenson to the social security administration in the record which was before the ALJ and the appeals council corroborates

his testimony at the ALJ hearing: "I tire very easily. I feel weak, exhausted, dizzy. My lips turn white or gray very easily.... I'm on 3 liters of oxygen daily. Also a maxi-mister. It puts a mist into the lungs. I have a standing prescription to get tetracycline when needed. I take breathine and quebron (?) for asthma. 2 atomizers: breath-air—B-covin." Id. at 124–27 (social security claim form filled out by a claims representative during an interview).

**8.** Twelve responses to questions posed to him at the ALJ hearing were "inaudible," verifying the claims representative's impression. Record, V. II at 45–50.

severe shortness of breath. There's no capability for further lifting or bending due also to the same physical symptomatology.

. . . .

[Sorenson] physiologically appears to be 20 years older than his chronological age.... He is physiologically uncapable [sic] of any sustained physical effort.... [A]ny occupation which requires even moderate physical exertion will exceed his cardiopulmonary capacity, he will become dyspneic and increasingly pale until he either blacks-out or ceases to exert himself.

. . . .

[Sorenson] is unable to do any physical work whatever [. H]e can walk 40' without marked dysnea [sic].... Hospitalization has been recommended but the pat[ient] has no health insurance & refuses. Pat[ient] is essentially confined to home as he can not get away from his oxygen & does not have a portable oxygen unit.

Record, V. II at 135, 175, 213.

Sorenson's testimony that he participates in chores around his home and yard does not preclude a conclusion that his employment must be limited to sedentary activities.

> While such activities [working in the yard, performing a few household tasks, working on cars, taking occasional car trips] may be considered, along with medical testimony, in determining whether a person is entitled to disability benefits, they do not in themselves establish that a person is able to engage in substantial gainful activity.

*Talbot,* 814 F.2d at 1462; *see also Williams,* 844 F.2d at 759.

In conclusion, the grid found at 20 C.F.R., pt. 404, subpt. P, app. 2, table 1,

rule 201.17 (1988), is applicable to Sorenson.[9] In finding to the contrary, the appeals council did not rely on substantial evidence and ignored both substantial evidence to the contrary and contradictory Tenth Circuit case law.

"Outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose." *Williams,* 844 F.2d at 760 (quoting *Dollar v. Bowen,* 821 F.2d 530, 534 (10th Cir.1987)); *see also Gatson,* 838 F.2d at 450. We conclude that the record fully supports a determination that Boyd Sorenson is disabled as a matter of law and is entitled to the social security benefits for which he applied. The judgment of the United States District Court for the District of Utah is REVERSED. This matter is remanded to the appeals council with direction that appropriate benefits be awarded Sorenson as of November 1, 1984.

---

9. *See also* 20 C.F.R., pt. 404, subpt. p, app. 2, § 201.00(h) (1988). This regulation is part of the explanation and definitions section illuminating table 1, in which rule 201.17, the rule of the grids properly applicable to Sorenson, appears. Section 201.00(h) provides:

> [F]or such individuals [age 45–49]; (1) who are restricted to sedentary work, (2) who are unskilled or have no transferable skills, (3) who have no relevant past work or who can no longer perform vocationally relevant past

work, and (4) who are either illiterate or unable to communicate in the English language, a finding of disabled is warranted. Sorenson is restricted to sedentary work (ALJ finding # 7, Record, V. II at 19), he has no transferable skills (ALJ finding # 10, Record, V. II. at 19), he can no longer perform relevant past work (ALJ finding # 6, Record, V. II at 19), and he is illiterate (Record, V. II at 6, 10, 123, 124, 128, 151, 154, 155, 175).