21 F.3d 1122
 Unempl.Ins.Rep. CCH (P) 17772A
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 
 Earl T. PACE, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 92-2168.
 United States Court of Appeals, Tenth Circuit.
 April 8, 1994.
 ORDER AND JUDGMENT[1]
 Before HOLLOWAY, BARRETT, and MCKAY, Circuit Judges.
 
 
 1
 HOLLOWAY, JR.
 
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 * Claimant Earl T. Pace appeals from a district court judgment affirming the Secretary of Health and Human Services' denial of claimant's application for social security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. 401-433. Claimant's application was denied on initial consideration and on reconsideration. Claimant then requested and was afforded a hearing before an Administrative Law Judge (ALJ). The ALJ concluded claimant was not disabled, and denied benefits. The Appeals Council denied review, making the ALJ's decision the final decision of the Secretary. E.g., Campbell v. Bowen, 822 F.2d 1518, 1520 (10th Cir.1987). The district court determined the Secretary's decision was supported by substantial evidence, and denied the claimant's motion to reverse or, in the alternative, to remand, and the claimant appealed. Our appellate jurisdiction is premised on 28 U.S.C. 1291.
 
 
 4
 On appeal claimant contends (1) the ALJ misinterpreted the medical evidence; (2) the ALJ failed to elicit an opinion from the vocational expert based on claimant's abilities and limitations; and (3) the Secretary's decision is not supported by substantial evidence. We review the Secretary's decision "to determine whether the findings are supported by substantial evidence and whether the Secretary applied correct legal standards." Pacheco v. Sullivan, 931 F.2d 695, 696 (10th Cir.1991). "We must determine whether the Secretary's decision of nondisability ... is supported by substantial evidence, i.e., ' "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ' " Williams v. Bowen, 844 F.2d 748, 750 (10th Cir.1988) (quoting Broadbent v. Harris, 698 F.2d 407, 414 (10th Cir.1983) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971))). In reviewing the Secretary's decision, we cannot weigh the evidence or substitute our discretion for that of the Secretary, but we have the duty to carefully consider the entire record and make our determination on the record as a whole. Dollar v. Bowen, 821 F.2d 530, 532 (10th Cir.1987). "We examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met." Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800-01 (10th Cir.1991).
 
 II
 
 5
 The Secretary has established a five-step sequential evaluation process to determine if a claimant is disabled. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir.1988) (listing five steps); 20 C.F.R. 404.1520. If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir.1989).
 
 
 6
 "[T]he claimant bears the burden of proving a disability, as defined by the Social Security Act, that prevents him from engaging in his prior work activity. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir.); 42 U.S.C.A. 423(d)(5) (1983). Once the claimant has established a disability, the burden shifts to the Secretary to show that the claimant retains the ability to do other work activity and that jobs the claimant could perform exist in the national economy."
 
 
 7
 Sorenson v. Bowen, 888 F.2d at 710 (quoting Ray v. Bowen, 865 F.2d 222, 224 (10th Cir.1989)).
 
 
 8
 Claimant, born December 9, 1942, has a high school education. He claims disability since October 9, 1987, due to major depression, a learning disability, and hypertension. At the hearing, the ALJ heard testimony from claimant and a vocational expert. The record contains various medical and psychological reports, including reports by a consulting psychologist engaged by the Secretary. The ALJ found that:
 
 
 9
 The medical evidence shows that [claimant's impairments since October 9, 1987] included: a major depression, with melancholia, and with a history of previous depressive episodes; a learning disorder involving expressive written skills; and hypertension, by history. (Exhibits 15, 19, 23, 25-7).
 
 
 10
 ALJ Decision at 2.
 
 
 11
 Claimant does not challenge the Secretary's determination that claimant does not suffer from any exertional impairments that would preclude him from performing a full range of light work. However, the ALJ determined at step four of the sequential evaluation process that claimant could not return to his past relevant work of carpet, furniture, and car sales. The ALJ concluded at step five that although claimant's nonexertional impairments limited the range of light work he could perform, claimant retained the functional capacity to perform certain light jobs which exist in significant numbers in the national economy. The vocational expert stated claimant could perform light work of retail sales jobs not involving high pressure sales or sales quotas, and cashier jobs. For reasons that follow, we feel that substantial evidence supports the ALJ's findings, including his ultimate finding at step five.
 
 III
 
 12
 Claimant challenges the ALJ's finding and argues that his depression prevents him from performing those jobs. He points to evidence that a symptom of his depression is a sleep disorder that prevents him from sleeping at night and requires him to nap for several hours every afternoon. On an average day claimant naps for a few hours in the afternoon. On a bad day he sleeps or watches television for twenty hours. Dr. Holstead, the treating psychologist, reported in November 1989 that Pace remained seriously depressed but had made some improvements; he no longer reported suicidal ideations, which had been reported in July 1988. R. 162-63. In a June 9, 1989 letter, Dr. Holstead also said that his opinion was that Pace met the criteria for an Affective Disorder with the particular diagnosis being Major Depressive Episode, R. 218 (citing "DSM-IIIR, 296.20"). We note also that Dr. Charles Bradshaw, a consultative psychologist with a Ph.D., reported on November 20, 1989, to the Social Security Administration on the impact of Pace's symptoms on his ability to work. He said that on Pace's "good days," he could "probably get along O.K." on the job except for the problems of concentration and short-term memory. On his bad days, he would not be able to function at all. This on-again--off-again pattern "does not make for a very stable or dependable employee. In my opinion, the bottom line would be that until the depression is brought under control, the claimant would not be very employable." R. 238.
 
 
 13
 The ALJ concluded that claimant does not require a greater total number of hours' sleep each day than an unimpaired individual. The ALJ found that claimant sleeps an average number of hours per day, but has become habituated to staying up late at night and then compensating by napping the following afternoon. The ALJ concluded if claimant were required to change his sleep habits, he could sleep at night and stay awake during the day. The ALJ stated that he did not find an inability on the claimant's part to sustain the physical demands of at least light work; that despite fidgeting and deconditioning produced by his depression, the claimant is physically able to perform the full range of at least light work activity. ALJ Decision at 5. On the basis of claimant's testimony about sitting for substantial periods at a nightclub, the ALJ found that despite any deconditioning occasioned by depression, and despite his described fidgeting, the claimant's "sitting capacity has remained unlimited for work-related purposes." R. 20.
 
 
 14
 The ALJ also noted that the claimant acknowledged during his testimony that he is able to stand and walk without problems and that he is able to lift and carry at least up to 20 pounds, and the ALJ said that claimant told the consultative psychologist, Dr. Bradshaw, that he is able on his "good" days (when he allegedly only sleeps for two or three hours in the afternoon) to take long walks at the local mall. Thus, the ALJ found that "the claimant's standing, walking, lifting, and carrying capacities are sufficient for at least light work, within the terms of 20 C.F.R. section 404.1567(b), notwithstanding any physical deconditioning produced by his depression." R. 20. Further, the ALJ considered the comment of Dr. Spiering, a clinical psychologist, of February 18, 1988, that "Pace is depressed and it is doubtful as to whether he could be successful in any vocational endeavor without some decrease in his depressive symptoms." She said he obtained a score indicating moderately severe depression. R. 166.
 
 
 15
 Claimant contends that his need for daytime sleep is a symptom of his depression, and that the ALJ improperly substituted his own psychological opinion for that of claimant's treating psychologist. It is true that the ALJ may not make medical findings "not supported by any medical evidence in the record, and thus [representing] the personal medical opinion of the ALJ." Kemp v. Bowen, 816 F.2d 1469, 1475 (10th Cir.1987). Moreover, we give special weight to the opinion of the claimant's physician. Campbell v. Bowen, 822 F.2d at 1523 n. 5. We note that at step five, which is our focus, the burden of proof was on the Secretary. Sorenson v. Bowen, 888 F.2d at 710. We must consider whether the ALJ's findings at step five violated the rule against substituting his own personal medical opinion for the medical and other evidence in the record, and whether that record evidence supports such findings of the ALJ.
 
 
 16
 We are satisfied that the ALJ's findings had sufficient medical and other record support and that the rule was not violated. Instead of being a statement of his own medical opinion, we believe that the ALJ's critical findings are proper ultimate fact-findings, supported by sufficient record evidence. The ALJ's most crucial finding was that the ALJ was "satisfied that the claimant, if prodded by stark necessity, could significantly change his sleep patterns." ALJ Decision at 12. In making his findings, the ALJ meticulously reviewed the medical evidence, the vocational expert's testimony, and the testimony of the claimant at the evidentiary hearing before the ALJ. Importantly, the ALJ noted that at a time when claimant's depression was apparently worse than it was at the time of the hearing, the claimant admitted he had called in to American Furniture sick on only one or two occasions. ALJ Decision at 12.[2] Further, the ALJ noted that despite Dr. Bradshaw's comments on claimant's short-term memory, attention, and concentration deficits that could get in the way of his successful performance of complex work, Dr. Bradshaw made other significant comments. He "opined that the claimant, despite his cognitive limitations, has had a 'very good' or 'unlimited,' ability to understand, remember, and carry out simple job instructions and a 'good,' or 'limited but satisfactory,' ability to understand, remember, and carry out detailed, but not complex, job instructions." R. 24 (citing Exhibit 26) (emphasis in original).
 
 
 17
 Moreover, the ALJ noted that the claimant acknowledged that his treating doctor, Dr. Holstead, had advised him that increased daytime activity would not detract from his condition, and would be therapeutic. ALJ Decision at 13.[3] A letter of June 29 from Dr. Holstead said that claimant manifests a significant sleep disturbance with difficulty in falling asleep during evening hours and resulting extreme fatigue during the day; that he finds it necessary to sleep for two or three hours almost every day, and this is a direct result of the sleep disturbance, one of the symptoms of his depression. R. 224, Exhibit 25. The ALJ made an observation about the claimant's physical appearance--that he was "alert and interested" throughout the hearing although he testified he had been awake much of the previous night.[4] The claimant testified that he had been out the previous night, came home and went to sleep, and then woke up and was still awake at 4:30 that morning. He had probably slept the previous day from 1:00 p.m. to 5:00 p.m., a fairly average routine. R. 59.
 
 
 18
 Based on the claimant's testimony, the ALJ inferred that the claimant has a harder time than an unimpaired individual meeting his responsibilities and maintaining a normal social and recreational life. ALJ Decision at 5. Nevertheless, Dr. Holstead wrote that the claimant "is still able to meet most of life's every day demands, in terms of cooking, cleaning, driving, and paying his bills." Id. (citing Exhibits 8, 16). In addition, the psychological evaluations showed that the claimant continued to devote meticulous attention to his dress and grooming and that he was not so apathetic as to no longer care about what is going on in the world around him. Id. (citing Exhibits 17, 26). Thus, the ALJ was satisfied that the claimant was able to organize his life well enough to dress for work, transport himself to and from his duty site, and to attend to his day-to-day responsibilities. Id.
 
 
 19
 The ALJ also noted that the vocational expert, William Krieger, a professional counselor holding a Ph.D. in that discipline, had testified that while he was not sure that the claimant could handle work with intense competition and quotas, and price negotiations, such as automobile or carpet sales, "[o]n the other hand activity is the antidote to depression." R. 81. Krieger testified that vocationally he thought the claimant had "transferable skills" and mentioned transfer of them to less aggressive sales work. R. 78. The vocational expert testified about the availability of jobs not involving high pressure. He said that with the limitations of the claimant that had been shown, there were some 100,000 retail clerk positions in New Mexico. The vast majority of them are in the less aggressive sales category. Krieger identified work in book stores and retail stores, drug stores, or Montgomery Wards or Sears stores, as work that claimant could do. R. 79-81, 83. The vocational expert answered on further examination by counsel that if there is a special requirement to sleep during the day, claimant would need special consideration in order to do a job. R. 82.
 
 
 20
 The ALJ noted that the vocational expert's testimony left no doubt that the claimant was unable to return to his past car and carpet sales positions, which did involve aggressive selling. And the ALJ therefore found the claimant was unable to perform his past relevant work. The ALJ noted further, however, he still judged the claimant "able to function successfully in the retail sales clerk positions in question." ALJ Decision at 10. In finding that the claimant had the capacity to make a satisfactory adjustment to a significant number of jobs in the national economy, the ALJ did not overlook the opinions of disability voiced by Dr. Spiering and Dr. Richard Smith. ALJ Decision at 13. We have related Dr. Spiering's comments and here note that Dr. Smith, an attending physician reporting to an insurance company, had stated on December 2, 1987, that claimant was totally disabled, having noted his major depression. He expressed the opinion, however, that claimant would be able to perform his work duties or other work within one to three months, recommending continued psychiatric and psychological treatment and an antidepressant and supportive psychotherapy. R. 160-161. The ALJ observed that the opinions of Dr. Smith and Dr. Spiering had been reached early in the period under review and prior to claimant's most recent period of treatment by Dr. Holstead, and their opinions were not found to support a finding that disability persisted for the required durational period. ALJ Decision at 13.
 
 
 21
 As noted, the ALJ found that the claimant was unable to return to his past car and carpet sales positions which involved aggressive selling. Accordingly, claimant was found unable to perform any category of his past relevant work. The ALJ then noted that the burden of proof shifted to the Secretary to show that the claimant, with his conditions and functional capacity, has been able to perform a significant number of other jobs in the national economy. ALJ Decision at 10. It was found that there are a significant number of jobs in the national economy which claimant could perform, namely, the retail clerk jobs in the less aggressive sales category. While it is a close question on this record, we feel that there is sufficient substantial record support for the ultimate findings of fact by the ALJ, which became those of the Secretary. We therefore sustain those findings and turn to the remaining contentions of the claimant.
 
 IV
 
 22
 Claimant also argues the vocational expert's opinion was not based on claimant's abilities and limitations because the hypothetical questions posed to the vocational expert did not include each and every limitation contained in claimant's psychological reports. The vocational expert testified he had reviewed the medical exhibits in the file and he heard claimant's testimony at the hearing. Therefore, we reject claimant's assertion that the vocational expert's opinion was not based on substantial evidence. See Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir.1990) (error in hypothetical posed to vocational expert was minimal where expert heard testimony concerning impairments).
 
 
 23
 Lastly, claimant argues for a remand for the Secretary to consider additional medical and other evidence submitted by him after the ALJ's hearing and the issuance of the ALJ's Decision. Such a remand may be made if we determine that the new evidence would have changed the Secretary's decision, had it been before him. Hargis v. Sullivan, 945 F.2d 1482, 1493 (10th Cir.1991). However, implicit in this determination is whether the proffered evidence related to the time period for which the benefits were denied. Id.
 
 
 24
 Here the Appeals Council addressed in detail each of the evidentiary items submitted by the claimant, e.g., a brain scan dated March 13, 1990, a cerebrovascular study dated March 16, 1990, and other reports, all dated after the ALJ's Decision issued January 23, 1990. The Appeals Council pointed out that all the reports referred to examinations and tests performed after the date of the Decision and that the claimant's application for a period of disability and disability insurance benefits was only through the date of the January 23, 1990, hearing. See 20 C.F.R. 404.970(b) (if new and material evidence is submitted, Appeals Council shall consider only additional evidence relating to the period on or before the date of the ALJ's hearing Decision). The Appeals Council pointed out that if claimant believes his condition has deteriorated since the ALJ's Decision, he may wish to file a new application. R. 4-5. We are not convinced that any error was committed in connection with the new evidence.
 
 
 25
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Claimant's testimony at the hearing sufficiently supports this finding. He was asked whether he was home sleeping when he should have been at work during his employment at American Furniture. The claimant replied:
 A. On one or two occasions I probably--I called in and took off. But it got to the point to where I thought I'm going to really mess myself up down the future [sic] if I can get everything squared away, so I decided it was better to quit.
 R. 53.
 
 
 [3]
 The claimant was asked about this point at the hearing:
 Q. Has the psychiatrist or anybody, any doctors ever told you that you might be better off if you're busy during the day?
 A. That's--Bobby Holsteader has told me to get more active--
 Q. Yeah?
 A. And I've tried but I haven't been able to do it successful for long periods of time. Even sometimes--even a day or two to carry on a regular routine.
 R. 71.
 
 
 [4]
 The hearing lasted for one hour, from 11:00 a.m. to 12:00 p.m. on June 22, 1989