William H. STEWART, Jr., Plaintiff,

v.

Kenneth S. APFEL, Commissioner
of Social Security, Defendant.

No. 97–4111–RDR.

United States District Court,
D. Kansas.

Oct. 15, 1998.

Terry E. Beck, Topeka, KS, for William H.
Stewart, Jr., plaintiff.

Nancy M. Caplinger, Office of United
States Attorney, Topeka, KS, for Commissioner of Social Security, defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an action to review a final decision by the Commissioner of Health and Human Services regarding plaintiff's entitlement to disability insurance benefits and supplemental security income (SSI) benefits under the Social Security Act. The parties have filed briefs and the court is now prepared to rule.

Plaintiff filed an application for disability benefits under Title II on March 6, 1995 and an application for SSI benefits under Title XVI on February 27, 1995. He alleged that his disability began on July 14, 1994. Plain-

tiff told social security employees that he was disabled due to "back injury and a thyroid condition." Plaintiff's applications were denied initially and on reconsideration by the Social Security Administration. At plaintiff's request, a hearing was held before an administrative law judge (ALJ) on July 2, 1996. On September 27, 1996, the ALJ determined in a written opinion that plaintiff was not under a disability at any time through the date of the decision. Plaintiff filed a request for review with the Appeals Council. On April 22, 1997, the Appeals Council denied plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

This court reviews the Commissioner's decision to determine whether his factual findings were supported by substantial evidence in light of the entire record and to determine whether he applied the correct legal standards. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir.1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quotations omitted). We may "neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir.1991).

The Commissioner has established a five-step sequential process to determine if a claimant is disabled. *Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir.1988). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir.1989). The burden of proof is on the claimant through step four; then it shifts to the Commissioner. *Id.*

Plaintiff was born October 5, 1957. He is a high school graduate. He has worked as a mental health technician and psychiatric aide. His last employment was in July of 1994.

Plaintiff's medical history is not lengthy. Between 1988 and November 1994, plaintiff saw Wayne Spencer, M.D. for various problems unrelated to his back, mostly involving hypothyroidism, headaches and bronchitis. Dr. Spencer saw plaintiff in August 1988 for a problem with hypothyroidism. He noted that plaintiff had the right lobe of his thyroid removed when he was 12 years old because of thyroidtoxicosis. Dr. Spencer noted that plaintiff had done well on medication since the surgery, but determined that plaintiff had run out of the medication several days prior to his office visit. He prescribed the medication again and found that plaintiff continued to do generally well in the following months and years with this condition. In June 1991, plaintiff was seen for a headache which was largely resolved. In August 1991, Dr. Spencer diagnosed plaintiff with "probably basically tension headaches" and advised plaintiff in terms of range of motion and frequent change of position with regard to the headaches.

On March 14, 1994, plaintiff saw Rex Wright, D.C., for back and neck pain from a year old work injury. Plaintiff had just returned to regular work on that day after performing light work since his injury on March 22, 1993. Plaintiff told Dr. Wright that he had experienced gradual strengthening of his back and neck since returning to light work. Plaintiff noted that he had chopped wood during the winter, and this had made his back and neck very sore for several days thereafter. Following examination, Dr. Wright diagnosed cervical, thoracic and lumbar segmental dysfunctions with associated myofascitis. He recommended that plaintiff continue with his regular work duties. He further recommended that plaintiff perform daily back exercises. Dr. Wright believed that periodic adjustments would be beneficial in helping plaintiff to adapt to his regular work duties.

On May 6, 1995, Edward Lee, M.D. saw plaintiff pursuant to a request by the state disability agency. Plaintiff complained of pain in the cervical spine and the lumbar spine, and pain in both hips and in the left knee. Dr. Lee observed that plaintiff had severe difficulty with heel to toe walking, squatting and hopping. He found that plaintiff had moderately severe difficulty with orthopedic maneuvers. Dr. Lee diagnosed plaintiff as suffering from arthralgias or joint pain. He noted give-way weakness throughout his hips, left knee, back and neck. He

did not find inflammatory changes or radiculopathy.

On June 15, 1995, x-rays were taken of plaintiff's left knee and lumbar spine. James P. Werner, M.D. found that the x-rays showed a normal left knee and normal lumbar spine.

On January 26, 1996, Douglas Boehr, D.C. wrote that he had treated plaintiff for lower back and leg pain since July 22, 1992, when he diagnosed plaintiff with L4/L5 subluxation with disc degeneration. Dr. Boehr noted that he had last examined plaintiff on January 17, 1996. At that time, plaintiff told Dr. Boehr that he was suffering from severe lower back and leg pain. Dr. Boehr determined that plaintiff should not lift objects over 20 pounds and should not engage in repetitive or prolonged movements such as pulling, stooping, bending, climbing, sitting or standing. Dr. Boehr believed that plaintiff continued to suffer from a permanent physical impairment to the lumbar spine. He concluded that plaintiff would not be able to do any manual labor that involved lifting or prolonged, repetitious movements.

On March 24, 1996, Robert Rinaldi, M.D. examined plaintiff at the request of the state disability agency. Plaintiff told Dr. Rinaldi that he had constant pain in his back. Plaintiff also told him that his functional limits varied. He was using ibuprofen as needed. During examination, Dr. Rinaldi noted some tenderness over the left sciatic notch and some subjective pain in the lower back and pelvis. Dr. Rinaldi found that plaintiff had diffuse musculoskeletal pain including cervical, thoracic and lumbar regions with no evidence of radiculopathy.

In applying for disability benefits, plaintiff submitted several documents to the SSA. On March 6, 1995, plaintiff claimed he had a "13% permanent back injury." Plaintiff indicated that he could not lift more than 50 pounds continually without experiencing sharp pains in his back and neck. He stated he suffered severe pain when sitting or walking. Plaintiff wrote that he was raising two children alone and, therefore, had to do all of the household chores. He stated he walked short distances for recreation. Plaintiff further stated that he could drive, but that driving long distances caused him discomfort.

On June 12, 1995, plaintiff submitted a daily activities questionnaire. He indicated that he cooked, washed clothes, shopped and did household chores. He further indicated that at times he needed help from his children with these duties. He watched television, listened to the radio, and read books, magazines and newspapers. He had no hobbies except for walking. He said he tried to walk one hour a week if he was able. He stated he did not engage in any other activities. He listed his only medication as synthyroid for his thyroid condition. He indicated he suffers no side effects from this medication.

At the hearing before the ALJ, plaintiff testified that he had not worked since July 1994. He indicated that he suffered several injuries to his back and neck while he was employed as a psychiatric aide. He said he now suffers from severe pain to his back, neck and hip. He indicated the pain in his hip causes numbness in his left leg. This pain occurs three times a week until his chiropractor "manipulate[s] it back in." He opined that the "main thing" preventing him from working was his severe left hip pain.

Plaintiff further stated that the pain in his neck causes headaches and disorganized thinking. He suggested that the pain in his neck can lead to a migraine headache, and this usually occurs one day a month. He indicated the pain in his neck was constant.

Plaintiff said he experiences shortness of breath when his back goes out. This occurs once or twice a month. He takes ibuprofen for the pain. The ibuprofen helps him to rest. He also takes Benadryl when he has a severe headache. He stated he was limited in the types of pain medication he could take because of his thyroid condition. He testified that he had half of his thyroid removed when he was twelve years old. He takes medication for the lack of production from the thyroid. He indicated the medication was working well with no side effects.

Plaintiff stated he had had no surgeries for any of his problems with his hip, back and neck. He had received chiropractic treatments and some physical therapy. He noted that the physical therapy did not help.

Plaintiff testified that his children do most of the duties around the house. They clean

and do laundry. He said he helped when he could. He does the cooking for the family. He also does the shopping with some assistance. Plaintiff said he stopped driving two years before the hearing. He said he engages in no outdoor activities except for walking. He is able to walk only a short distance and he indicates that he is in pain during this period. Plaintiff thought he could walk from two blocks to one quarter mile at one time, stand for 15 to 20 minutes, sit for one-half hour, lift a book, a gallon of milk, or a maximum of twenty pounds, and read for twenty minutes. He said he had to lie down for two hours a day to relax. Plaintiff, who is right-handed, stated that he occasionally had problems gripping with his left hand. Plaintiff indicated he had trouble climbing stairs, bending, stooping and squatting. These activities, he indicated, cause him severe pain. Plaintiff did not believe that he could work because he was in pain whether he stood or sat.

Lisa Keen, a vocational expert, also testified at the hearing. The ALJ asked her to assume an individual with plaintiff's age, education, work background, and the following physical limitations: not able to lift ten pounds frequently or twenty pounds occasionally; no prolonged walking; no climbing, bending, stooping, crouching or crawling; lack of left hand grip strength; must be able to move between sitting and standing every thirty minutes; and must lay down for at least one hour a day. Ms. Keen testified that such an individual would not be able to do plaintiff's past relevant work. She did, however, indicate that such a person could be employed as a parking lot attendant, photocopy machine operator, and microfilm processor in the light unskilled category, and a cashier, telephone solicitor and ticket seller in the sedentary unskilled category. She stated that significant numbers of these occupations occurred in the local and national economies. She did note, in response to a question from plaintiff's counsel, that such an individual could not do these jobs if he had to rest for more than one hour during the workday. She also indicated that the ability of an individual to perform these jobs with disorganized thinking would depend on the degree of the impairment.

The ALJ found that the medical evidence established that plaintiff had arthralgias of both hips; left knee; and cervical, thoracic, and lumbar spine, without evidence of radiculopathy. He further determined that plaintiff was clinically euthyroid with Synthyroid replacement and status post surgery at age 12. He also found a history of recurrent bronchitis. The ALJ determined that plaintiff did not have an impairment or combination of impairments which met or equaled a listed impairment. The ALJ further determined that plaintiff's complaints of disabling symptoms were only partially credible. The ALJ found that plaintiff had the residual functional capacity to lift ten pounds frequently and twenty pounds occasionally, and should not engage in prolonged walking, climbing, bending, stooping, crawling, crouching, or using his non-dominant hand to grip. He also found that plaintiff needed to alternate sitting and standing every thirty minutes and lie down one hour per day, which he determined could be accommodated by normal break periods. The ALJ concluded that plaintiff was unable to perform his past relevant work but that there were other jobs in the local and national economies that plaintiff could perform. The ALJ relied both upon the grid guidelines and the vocational expert's testimony to reach this conclusion.

Plaintiff raises several arguments in support of his position that the ALJ's decision is not supported by substantial evidence. He asserts that the ALJ did not adequately consider all of the facts. He further argues that the ALJ did not properly follow the five-step sequential process, particularly as to steps two and three. He also contends that the ALJ's credibility determination is not supported by substantial evidence. He further asserts that the ALJ failed to properly consider his mental impairment. Finally, he suggests that the ALJ improperly relied on the medical-vocational guidelines.

The court is not persuaded that the ALJ overlooked any significant factual information in the record. He carefully examined and analyzed all of the medical evidence as well as the plaintiff's testimony. The court also finds that the ALJ properly applied the five-step evaluation process. He determined that plaintiff had not engaged in substantial gain-

ful activity since July 14, 1994 and that he suffered from a severe combination of impairments. He further found, however, that plaintiff's impairments did not meet or equal a listed impairment. Plaintiff has vaguely suggested that his impairments meet certain listings for musculoskeletal impairments. Plaintiff, however, fails to allege how he meets any of these listings and fails to provide any evidence which proves that he meets all of the specified criteria for any listed impairment.

Plaintiff's primary argument is that the ALJ's decision that his subjective testimony of pain was only partially credible is not supported by substantial evidence. The determination of credibility is left to the observations made by the ALJ as the trier of fact. *Talbot v. Heckler,* 814 F.2d 1456, 1461 (10th Cir.1987). Great deference should be given to the ALJ's conclusion as to credibility. *Campbell v. Bowen,* 822 F.2d 1518, 1522 (10th Cir.1987).

An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony. The ALJ may consider numerous factors when determining credibility, including inconsistencies in the plaintiff's testimony, inconsistencies between his testimony and his conduct or activities, claimant's daily activities, failure to seek medical treatment, and medical evidence. *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir.1995). In order to reject pain testimony where the plaintiff produces evidence of a medical impairment that could cause pain, the ALJ must make findings sufficiently specific to permit this court to conclude that the ALJ did not arbitrarily discredit the plaintiff's testimony.

Here, the ALJ explained his reasons for discounting plaintiff's pain allegations, including the objective medical evidence, lack of medication for severe pain, infrequency of medical treatment, his daily activities, and the inconsistencies between his testimony and his statements made in other documents and to his doctors. Plaintiff has argued that the ALJ placed too much emphasis on the lack of medical evidence. We must disagree. The ALJ evaluated the lack of medical evidence in light of all of the evidence in the record. Because we conclude that the ALJ

properly linked his credibility findings to the record, we find no reason to deviate from the general rule to accord deference to the ALJ's credibility determinations.

Plaintiff also argues that the ALJ failed to properly evaluate and develop the evidence concerning his mental condition. He notes that the ALJ failed to consider the evidence that he suffered from disorganized thinking. The court finds no error in the consideration by the ALJ of plaintiff's "mental condition." Plaintiff did not allege mental disability in his applications. He did testify that he became confused one day a month when he had severe neck pain or a migraine headache. The medical evidence fails to provide any support for this testimony. Plaintiff has never been treated by a physician for a migraine. His doctors made no mention of mental confusion or mental impairment during any examination. The records fail to show that plaintiff ever complained to his doctors about confusion. The court finds inadequate evidence of a mental impairment, so we do not find that the ALJ erred in evaluating this condition.

Finally, plaintiff argues that the ALJ improperly relied upon the medical-vocational guidelines to conclude that he was not disabled. We disagree. The ALJ only used the Guidelines as a framework to determine whether sufficient jobs remain within the plaintiff's range of residual functional capacity. He also incorporated the opinions of the vocational expert. The court finds that the ALJ properly evaluated plaintiff's exertional and nonexertional impairments. *See Hargis v. Sullivan,* 945 F.2d 1482, 1491–92 (10th Cir.1991).

In sum, after a thorough review of the administrative record, the court finds that the findings and conclusions of the ALJ are based upon substantial evidence. The decision of the ALJ must be affirmed.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is hereby affirmed.

**IT IS SO ORDERED.**