Debra K. PIATT, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. 00–4113–JAR.

United States District Court,
D. Kansas.

Sept. 27, 2002.

For order denying motion for relief, see 231 F.Supp.2d 1128.

Pantaleon Florez, Jr., Topeka, KS, for Plaintiff.

David P. Murdick, K. Gary Sebelius, Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, Topeka, KS, for Defendant.

### MEMORANDUM ORDER AND OPINION REMANDING

ROBINSON, District Judge.

This is an appeal from the denial of Plaintiff's application for disability insurance benefits.[1] The denial was based on a finding that although Plaintiff could not return to her past relevant work, and although her exertional limitations do not allow her to perform the full range of sedentary work, there are a significant number of jobs in the national economy which she could perform.[2]

**Procedural Background**

Plaintiff Debra K. Piatt applied for social security disability benefits on February 17, 1998, claiming disability beginning on June 14, 1997, from injuries she sustained in a motor vehicle accident on that date.[3] In the accident, Plaintiff sustained a broken right ankle, broken left femur, and crushed right heel.[4] Plaintiff claims that she is now disabled by pain and limitation in those extremities. She further claims that the accident aggravated tendinitis in her left elbow, and that she also suffers back pain, as well as tendinitis and carpal tunnel syndrome in her right arm and hand.

The Commissioner denied Plaintiff's claim originally and upon reconsideration.[5] After conducting a hearing on Plaintiff's claim on January 11, 1999, an Administrative Law Judge (ALJ) found that Plaintiff was not under a disability as defined in the Social Security Act.[6] The Appeals Council

---

1. This action is brought under Title II of the Social Security Act, 42 U.S.C. § 401 et seq.

2. Tr. 22

3. Tr. 66

4. Tr. 138–139, 206

5. Tr. 26–27

6. Tr. 22–23

affirmed the ALJ's decision on May 5, 2000.[7] The ALJ's decision is now the final decision of the Commissioner for purposes of judicial review.

**Plaintiff's Background**

Plaintiff, born on December 30, 1954, was 44 years old at the time of her administrative hearing in January 1999.[8] She completed the 11th grade and never received a GED.[9] Plaintiff is ambidextrous; she writes with her left hand but uses her right hand for everything else.[10] Plaintiff's past work history includes work as a cook, waitress and manager.[11]

**Plaintiff's Testimony at the January 11, 1999 hearing before the ALJ**

Plaintiff testified that since her June 14, 1997 car accident, she has not worked nor sought work, except she once or twice tried to work for her mother as a cook, and she once tried to help her daughter wait tables.[12] She was unable to work as a cook for longer than 2 to 2½ hours because pain precluded her from standing without taking breaks as needed. She was unable to work more than an hour as a waitress because of pain.[13] Plaintiff testified that pain in her foot and legs causes her difficulty standing for more than 1½ hours and difficulty walking at a normal pace for more than 30 to 45 minutes. After standing or walking for these periods of time, she must take a 10 to 15 minute break.[14] She noted that the weather and how much she has already walked, both affect her stamina, but that after 30 minutes to an hour, she needs to walk around and stretch to get relief.[15] Plaintiff walks with a limp and one of her feet turns inward causing her to trip over herself.[16] Plaintiff testified that she is unable to get down on her left knee at all, is unable to bend, and cannot climb ladders. She can walk stairs only very slowly.[17] Plaintiff describes her pain on an increasing scale of 1 to 10, as ranging from 5 to 6 for ankle pain and 6 to 7 after 45 minutes of walking.[18] She also has lower back pain when she sits, stands, sleeps or walks.[19] She can sit for 30 minutes, but then needs a stretch break to avoid pain in her back, legs and feet.[20] She noted that how long she can sit depends on whether she is sitting in a regular chair or recliner.[21] Plaintiff describes her pain on an increasing scale of 1 to 10, as ranging from 5 to 6 for back pain, but 7 if she sits too long.[22]

Plaintiff testified that she has pain and limitations in her upper extremities as well. Before the accident, she had tendinitis in her left arm, which the accident aggravated, such that she continues to have pain and "tennis elbow" in her left arm.[23] She further testified that she has numbness and pain in her right hand and

7. Tr. 5–6

8. Tr. 206

9. Tr. 224, 206

10. Tr. 224

11. Tr. 233

12. Tr. 213–214, 224

13. Tr. 214

14. Tr. 207–210

15. Tr. 211–212

16. Tr. 210–211

17. Tr. 213–215

18. Tr. 212–213

19. Tr. 209–211

20. Tr. 211–212

21. Tr. 232

22. Tr. 212–213

23. Tr. 225–226, 215–216

forearm. After driving, using a calculator, talking on the phone or laying in bed for longer than 30 minutes, she has numbness in her right hand and forearm. Her right arm goes to sleep and she has to lift her arm and shake it to relieve the numbness.[24]

Plaintiff testified that she lives with her boyfriend and cares for three children, a 13 year old and seven year old twins. Every day she prepares them breakfast and supper. She spends about an hour preparing supper, but must take "a couple" of rest breaks. She finds it painful and difficult to peel potatoes, because her fingers start aching.[25] Plaintiff further testified that she does some housework: vacuuming for no more than 30 minutes at a time; two loads of laundry a day; and loading the dishwasher. On her "good days" she can do this housework for 30 minutes to an hour before stopping to rest in a recliner with her feet up. On her bad days she is unable to do even a total of two hours of housework. On her bad days she spends most of her time in her recliner with her feet propped up. She is never able to mop, clean out the refrigerator, straighten pots and pans in a low cabinet or dust in high places.[26]

### The ALJ's January 15, 1999 decision

The ALJ found,[27] *inter alia*, that:

The medical evidence establishes that the claimant, status post motor vehicle accident, has severe impairments consisting of a broken left femur and broken right calcaneus but that she does not have an impairment or combination of impairments that meets or equals one listed in Appendix 1, Subpart P, Regulations No. 4.

The claimant's statements regarding her impairments and their impact on her ability to work are credible to the extent that they do not exceed the limitations set forth in the residual functional capacity determination stated below.

The claimant has the residual functional capacity to perform the physical exertion requirements of sedentary work in that she is able to occasionally lift and carry up to 10 pounds and up to 10 pounds frequently; to stand and walk up to 2 hours in an 8 hour workday; and to sit for an entire 8 hour workday, 20 C.F.R. 404.1545.

The claimant's residual functional capacity is reduced in that she is restricted from more than occasional bending, squatting, crawling, climbing, stooping, crouching and kneeling. The claimant must avoid exposure to unprotected heights, exposure to marked temperature changes and being around moving machinery.

The claimant is unable to perform her past relevant work.

. . . .

The claimant has acquired work skills including involving record maintenance, ordering, supervising and planning which are transferable to work at a sedentary exertional level such as that of production clerk. 20 C.F.R. 404.1568.

. . . .

Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work . . . there are a significant number of jobs in the national economy which the [sic] she could perform. Examples of such jobs are final assembler and electronics tester. The claimant is capable of performing the entire base of unskilled, sedentary occupations and jobs.

---

**24.** Tr. 215–217

**25.** Tr. 219

**26.** Tr. 218–222

**27.** Tr 21–22

## Asserted Errors

Plaintiff asserts the ALJ erred because he: (1) failed to give proper weight to the opinion of the treating physician and failed to affirmatively seek clarification of some inconsistencies in the treating physician's report concerning upper and lower extremity limitations; (2) failed to properly evaluate Plaintiff's claims of pain and failed to properly evaluate and articulate its findings concerning Plaintiff's credibility; and (3) as a consequence of these errors, failed to propound a proper hypothetical question to the vocational expert (VE).

## Standard of Review

On appeal, judicial review of the Commissioner's determination that claimant is not disabled is limited.[28] The Court's review is limited to determining whether the Commissioner's factual findings were supported by substantial evidence in light of the entire record and whether he applied the correct legal standards.[29] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[30] Although the court should meticulously examine the record, it may "neither reweigh the evidence nor substitute our judgment for that of the agency."[31]

The Commissioner has established a five-step sequential process to determine if a claimant is disabled.[32] If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there.[33] The burden of proof is on the claimant through step four; then it shifts to the Commissioner.[34] When a claimant has one or more severe impairments, the Commissioner must consider the combined effects of the impairments in making a disability determination.[35] A person is disabled within the meaning of the Social Security Act only if her physical and mental impairments, considered in combination, preclude her from doing her previous work, and she lacks the residual functional capacity (RFC) "to perform other work in the national economy in view of [her] age, education, and work experience."[36]

## Discussion

### Impairments in Upper Extremities:

### Tendinitis in Left Elbow

The ALJ found that Plaintiff has only two severe impairments, a broken left femur and broken right calcaneus. The ALJ found that Plaintiff's other claimed impairments were not severe. He found that while she had sustained tendinitis in her left elbow, it was not severe, as it had

**28.** *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495 (10th Cir.1992).

**29.** *Hawkins v. Chater,* 113 F.3d 1162, 1164 (10th Cir.1997).

**30.** *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quotations omitted).

**31.** *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 800 (10th Cir.1991).

**32.** *Reyes v. Bowen,* 845 F.2d 242, 243 (10th Cir.1988); 20 C.F.R. § 404.1520.

**33.** *Sorenson v. Bowen,* 888 F.2d 706, 710 (10th Cir.1989). Disability is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ..." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

**34.** *Id.*

**35.** *Campbell v. Bowen,* 822 F.2d 1518, (10th Cir.1987) (citing 42 U.S.C. § 423(d)(2)(C)).

**36.** *Bowen v. Yuckert,* 482 U.S. 137, 142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

not been shown "to significantly impact her basic work abilities." He acknowledged, that despite finding that her left arm tendinitis was not severe, he must take it into account (at Step 5) when determining Plaintiff's RFC.[37] At Step 5, however, the ALJ found that this impairment did not affect her RFC, because the evidence, including the clinical notes of her treating physician, Dr. Stanley Jones, showed that her left arm tendinitis was mild and did not require continued treatment.[38]

■ The ALJ's finding is based on substantial evidence. The objective medical evidence, as well as the Plaintiff's testimony, fails to establish that the left arm tendinitis was significantly painful, or impaired Plaintiff's ability to perform daily activities or to write with her left hand. Plaintiff noted no difficulty in grasping with her left hand.[39]

### Tendinitis in right arm and Carpal Tunnel in right arm and hand

At Step 2, the ALJ found that Plaintiff's alleged right arm tendinitis and carpal tunnel syndrome were not "medically determinable" from the reports of the treating physician, Dr. Jones, or the consultative physician, Dr. Thompson.[40] The ALJ noted that although Plaintiff alleged that she had little grasping ability with her right hand, and had been treated for right arm tendinitis over 20 years ago, Dr. Thompson, who examined her twice, found that her grip strength was normal, her dexterity was preserved, she had no atrophy, cyanosis, clubbing, edema or muscle wasting, and he found negative signs of carpal tunnel when he tested her in his August 1998 examination.[41]

■ But at Step 2, the Tenth Circuit has required only a "de minimus" showing by plaintiff, that she has an impairment that would have more than a minimal effect on her ability to do basic work activities.[42] Plaintiff has made at least a de minimus showing, through her testimony about how the use of her right hand and arm is limited. Plaintiff also made a de minimus showing through the medical records of Dr. Jones, the treating physician, who in May 1998, tested Plaintiff for carpal tunnel, found "some symptomatology of carpal tunnel," and prescribed a cock-up splint for her to wear at night.[43] The ALJ erred in not giving any weight to this finding by the treating physician. The Commissioner must give substantial weight to the evidence and opinion of the claimant's treating physician, unless good cause is shown for rejecting it. If a treating physician's opinion is rejected, specific, legitimate reasons must be given.[44] Thus, the ALJ erred in finding that the right arm tendinitis and carpal tunnel were not medically determinable and thus not severe at Step 2. Despite this finding, however, at Step 5, the ALJ further discussed why these were not severe and disabling impairments.

### Manipulative limitations from right arm tendinitis and carpal tunnel.

At Step 5, the ALJ determined that Plaintiff's RFC allowed her to perform the entire range of unskilled, sedentary occu-

---

**37.** Tr. 15, 19

**38.** Tr. 16, 18–19

**39.** Tr. 227

**40.** Tr. 15

**41.** Tr. 15–16, 175, 192

**42.** *Hinkle v. Apfel,* 132 F.3d 1349, 1352 (10th Cir.1997).

**43.** Tr. 145

**44.** *Frey v. Bowen,* 816 F.2d 508, 513 (10th Cir.1987); *Turner v. Heckler,* 754 F.2d 326, 329 (10th Cir.1985).

pations and jobs.[45] This type of work requires the ability to use one's hands in a repetitive and manipulative fashion.

Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.[46]

Manipulative limitations: Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. Fine movements of small objects require use of the fingers; e.g., to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.[47]

The ALJ determined that Plaintiff could perform such work, having no manipulative limitations. Plaintiff contends that the ALJ erred in evaluating the opinion of Dr. Jones and failing to seek clarification of an inconsistency in Dr. Jones's RFC questionnaire. In a Residual Functional Capacity questionnaire completed by Dr. Jones on December 5, 1998, he answered questions IV and V in an apparently inconsistent way. Question IV stated: "Claimant can use hands for repetitive action such as ... simple grasping, pushing & pulling, fine manipulation." Dr. Jones checked boxes indicating that Plaintiff could not perform any of these repetitive actions, with either her right or left hand. Question V asked: "Is there evidence of any disorder that would limit in any way repetitive hand action involving: simple grasping, pushing & pulling, fine manipulation." Dr. Jones checked boxes indicating that there was **no** evidence of any

disorder that would limit any of these repetitive actions in either her right or left hand.[48]

The ALJ noted that "the evaluation of manipulative function is obviously recorded incorrectly in that Dr. Jones expresses alternately that total manipulative limitation is present while indicating that there is no disorder presented that limits manipulative ability. Clearly the claimant does not present with a complete loss of manipulative ability. Thus, the ALJ concluded that there was no manipulative limitation."

The ALJ erred in several respects. First, rather than seek clarification from Dr. Jones, the ALJ assumed that Dr. Jones meant to represent that Plaintiff had no manipulative limitation. Such a finding would be consistent with Dr. Thompson's observations and tests during his March 1998 and August 1998 examinations. But, the ALJ's finding ignored Dr. Jones's clinical findings in May 1998, that he tested Plaintiff for carpal tunnel and she had a "positive Tinel's" and "positive Phalen's" indicative of "some symptomatology of carpal tunnel."[49] Obviously, the ALJ's assumption and conclusion that there was no manipulative limitation excluded the possibility that there was some limitation.

Generally, the ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.' "[50] A treating physi-

---

45. Tr. 22

46. SSR 96–9p

47. *Id.*

48. Tr. 200–201

49. Tr. 145

50. *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir.1995) (quotation omitted); *See also Security Ruling 96–2p* (stating that where a treating physician's medical opinion is well-supported and not inconsistent with the other

cian's report can be rejected "if it is brief, conclusory and unsupported by medical evidence" or is "not supported by specific findings."[51] When a treating physician's opinion is inconsistent with other medical evidence, the ALJ should examine the reports of other physicians to determine whether they outweigh the report of the treating physician.[52]

But, the ALJ gave controlling weight to the consultative physician's opinion that Plaintiff did not have carpal tunnel, noting that carpal tunnel was only "provisionally diagnosed" by Dr. Jones, whose order for nerve conduction tests was not carried out.[53] The fact that the nerve conduction tests were not performed is an insufficient reason to reject the treating physician's findings and opinion.[54] Moreover, Dr. Jones performed the same clinical tests as Dr. Thompson performed, the Tinel's and Phalen's tests.[55] Inexplicably, the ALJ accepted Dr. Thompson's negative findings as conclusive, and rejected Dr. Jones's positive findings, when their respective findings were based on the same tests.

Giving Dr. Thompson's findings more weight is not justified, when other evidence in the record supports Dr. Jones's positive findings of carpal tunnel. Plaintiff recounted a history of problems with ten-

dinitis and carpal tunnel in her right hand and arm. She was treated for the tendinitis more than 20 years ago, and the condition was aggravated by the accident. In addition, her testimony was that she has numbness and pain in her right hand and arm after using them for 30 minutes, and that peeling potatoes causes her fingers to ache.[56]

■ The ALJ discounted this other evidence supportive of Dr. Jones's opinion, however, because the ALJ found Plaintiff's claims not credible. He noted that Plaintiff did not complain to any physician of record about her right hand or arm until her August 1998 consultative examination with Dr. Thompson.[57] That is not true. Dr. Jones's clinical notes reflect that he tested Plaintiff for carpal tunnel in May 1998; and in a Reconsideration Disability Report she filed in July 1998, Plaintiff complained of carpal tunnel and numbness in her right wrist and arm.[58] The ALJ further questioned Plaintiff's credibility by noting that she cancelled her appointment with the physician Dr. Jones referred her to and never obtained a nerve conduction test.[59] The extensiveness of a claimant's attempts to obtain medical relief, or failure to comply with a physician's directives, is one of many factors relevant in considering the credibility of the claimant's subjective complaints.[60] Although credibility deter-

---

substantial evidence in the case record, it must be given controlling weight).

51. *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir.1988); *Castellano v. Sec. of Health and Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).

52. *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 289–90 (10th Cir.1995).

53. Tr. 17

54. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir.1987).

55. Tr. 145

56. Tr. 215–17, 219

57. Tr. 18

58. Tr. 145, 99

59. Tr. 16

60. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995) (stating that when considering the credibility of subjective complaints, the ALJ should consider factors such as "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consis-

minations are peculiarly in the province of the finder of fact and not overturned when supported by substantial evidence,[61] the ALJ's findings regarding credibility must be closely and affirmatively linked and logically connected to substantial evidence.[62] While the ALJ may rely upon claimant's failure to pursue treatment or take medication for determination on credibility, the ALJ must consider whether such treatment would have restored claimant's ability to work.[63] The ALJ did not articulate how obtaining a nerve conduction test would have provided Plaintiff any further relief than the cock-up splint and pain medication prescribed by Dr. Jones. Moreover, the record shows that Plaintiff was a "self pay" patient;[64] and Plaintiff testified that she could not afford the $700 to $800 cost of the nerve conduction tests, and that Dr. Jones's office indicated that they would check to see if "disability" would pay the cost.[65]

Given the differing opinions of Dr. Jones and Dr. Thompson, and the evidence supportive of Dr. Jones's opinion, even if of questionable credibility, the ALJ should have, at the very least, contacted Dr. Jones to seek clarification of his internally inconsistent statements in the RFC questionnaire. The regulations provide that the Commissioner must seek additional evidence or clarification from a medical source when the report from a medical source contains a conflict or ambiguity that must be resolved.[66] And a Social Security Ruling provides that the Commissioner must make a reasonable effort to recontact treating sources for any needed clarification of their opinions.[67]

Clarification of whether Plaintiff has manipulative limitations, and if so, to what extent, might have a significant impact on her RFC. "Any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base."[68] This is demonstrated by the vocational expert's response to one of the hypotheticals posed by the ALJ in this case, that assumed the limitations in Dr. Jones's RFC, except she has manipulative limitations, and is able to use her right hand for only 30 minutes at a time, necessitating a 5 to 10 minute break before resuming use of the right hand. The right hand is her dominant hand, except she does not use it for writing. The vocational expert opined that given these limitations, the sedentary base of jobs would be reduced by 90 to 95 percent.[69]

■ Thus, the Court concludes that the record does not contain substantial evidence to support the ALJ's finding that there was no manipulative limitation. The matter shall be remanded back to the Commissioner for further proceedings. Upon remand, the Commissioner shall clarify Plaintiff's manipulative limitations and the impact on her RFC.

tency or compatibility of nonmedical testimony with objective medical evidence") (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir.1991)).

**61.** *Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 777 (10th Cir.1990).

**62.** *See Kepler*, 68 F.3d at 391; *Huston v. Bowen*, 838 F.2d 1125, 1131 (10th Cir.1988).

**63.** *See Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir.1987)

**64.** Tr. 145

**65.** Tr. 226

**66.** 20 C.F.R. § 404.1512(e)(1).

**67.** SSR 96–5p.

**68.** SSR 96–9p, 1996 WL 374185.

**69.** Tr. 236

**1288**

### Impairments of Lower Extremities

### Ability to Stoop

The ALJ found at Steps 2 and 5 that Plaintiff has severe impairments from a broken left femur and broken right calcaneus.[70] The ALJ concluded that these impairments allow her to have an RFC to perform the physical exertion requirements of sedentary work, lifting and carrying up to 10 pounds frequently, standing and walking up to 2 hours in an 8 hour workday and sitting for an entire 8 hour workday. The full range of sedentary work,

> requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8–hour workday. Sitting would generally total about 6 hours of an 8–hour workday.[71]

Furthermore, in sedentary work,

> Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work. An ability to stoop occasionally; i.e., from very little up to one-third of the

time, is required in most unskilled sedentary occupations. A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work.[72]

The ALJ stated that Plaintiff's RFC is reduced because she can only occasionally bend, squat, crawl, climb, stoop, crouch or kneel.[73] But Plaintiff argues that there is no substantial evidence supporting his finding that she can occasionally stoop. In fact, Dr. Jones, her treating physician stated in the RFC questionnaire that Plaintiff can occasionally bend or crawl, but can **never** squat, climb, stoop, crouch or kneel.[74] The ALJ disregarded this finding of Dr. Jones, however, because:

> Dr. Jones's assessment that the claimant is capable of occasional bending must supersede the inconsistent finding in his evaluation that the claimant is incapable of stooping, crouching, kneeling and crawling. Under Social Security Ruling 85–15 these functions are defined in basic terms. Stooping, kneeling, crouching, and to some extent crawling, are described as synonymous with bending in that they are all progressive forms of bending parts of the body. Since the claimant is seen by Dr. Jones as capable of occasional bending overall, it must be concluded that she is capable of occasional stooping, kneeling, crouching and crawling.[75]

However, nothing in the RFC questionnaire filled out by Dr. Jones would inform him that if he indicates that Plaintiff can bend "occasionally" he is also indicating

---

**70.** Tr. 15

**71.** SSR 96–9p, 1996 WL 374185.

**72.** *Id.*

**73.** Tr. 22

**74.** Tr. 201

**75.** Tr. 19

that she can perform the other listed actions occasionally. On the contrary, the form asks for a separate evaluation of the claimant's ability to "bend, squat, crawl, climb, reach above, stoop, crouch, kneel" and the respondent is to separately check whether claimant is able to do each activity "not at all," "occasionally," "frequently," or "continuously." [76] Thus, the ALJ erred in rejecting Dr. Jones's assessment that Plaintiff could never squat, climb, stoop, crouch or kneel, and could only occasionally bend or crawl.

■ In particular, by rejecting Dr. Jones's assessment that Plaintiff could never stoop, the ALJ posed a hypothetical to the vocational expert which included that Plaintiff could occasionally stoop. Stooping is necessary in sedentary work; a restriction to occasional stooping minimally erodes, and a complete inability to stoop significantly erodes, the unskilled sedentary occupational base. Thus, the ALJ's error was material to the Step 5 determination of whether there are jobs in the national economy that Plaintiff can perform.

Because there is no substantial evidence supporting the ALJ's finding that Plaintiff can occasionally stoop, the matter shall be remanded back to the Commissioner for further proceedings. Upon remand, the Commissioner shall include Plaintiff's complete inability to stoop in his consideration of her RFC.

**Ability to Sit or Stand without breaks**

In a sedentary position,

Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and stand-

ing are required occasionally and other sedentary criteria are met.... Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8–hour workday, and sitting should generally total approximately 6 hours of an 8–hour workday.[77]

The ALJ found that Plaintiff had the RFC to stand and walk up to 2 hours in an 8 hour workday; and to sit for an entire 8 hour workday.[78] Plaintiff argues that there is no substantial evidence to support his finding; she has difficulty standing for more than 1½ hours and difficulty walking at a normal pace for more than 30 to 45 minutes. After standing or walking for these periods of time, she must take a 10 to 15 minute break.[79] She noted that the weather and how much she has already walked, both affect her stamina, but that after 30 minutes to an hour, she needs to walk around and stretch to get relief.[80] Plaintiff claimed that her ability to sit, stand and walk was limited by pain in her heel, leg, and back.

Having to shift positions or stand up and walk around every 30 minutes is a significant non-exertional limitation, because a normal workday permits breaks only once every 2 hours. Although some positions allow for alternate sitting and standing, particularly for unskilled occupations,

most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.[81]

**76.** Tr. 201

**77.** SSR 83–10

**78.** Tr. 22

**79.** Tr. 207–210

**80.** Tr. 211–212

**81.** SSR 83–12.

The ALJ found Plaintiff's subjective claims of impairment, symptoms and pain in the lower extremities credible only "to the extent that they do not exceed the limitations set forth in the residual functional capacity determination." That is to say, the ALJ found that Plaintiff's subjective claims were credible only to the extent that they supported his ultimate determination [82] that she could stand or walk for 2 hours in an 8 hour workday and sit for an entire 8 hour workday.

■ The proper analysis of evidence of alleged disabling pain was set forth by the Tenth Circuit in *Luna v. Bowen*.[83] This analysis requires consideration of (1) whether plaintiff established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the plaintiff's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, plaintiff's pain is in fact disabling.[84]

■ With respect to Plaintiff's claim of back pain, the ALJ found insignificant objective evidence of a pain producing impairment; an x-ray of the lumbar spine showed only minimal end plate spurring at L3–4.[85] The ALJ did not explain how this "minimal spurring" meant there was no objective evidence of a back injury. However, Dr. Thompson's examination also suggested that Plaintiff had no significant back injury. He found that her straight

leg raising was negative and there were no paraspinous muscle spasms.[86] The ALJ did acknowledge, however, that there was objective medical evidence that Plaintiff had a lower extremity pain-producing impairment in her heel and leg.[87] If a pain-producing impairment is demonstrated by objective medical evidence, the decision maker must consider the relationship between the impairment and the pain alleged.

Although the ALJ found that the medical record did not reflect an impairment consistent with more than moderate right heel and left leg pain, the claimant does not have to prove by objective medical evidence that the extent of her impairment is sufficient to cause the pain alleged. She only need show a loose nexus.[88] The impairment or abnormality must be one which could reasonably be expected to produce the alleged pain. If an appropriate nexus does exist, the decision maker must then consider all the evidence presented to determine whether the claimant's pain is in fact disabling.[89] This is in recognition that "the severity of pain is inherently subjective."[90] Plaintiff's testimony and contemporaneous complaints to physicians provide adequate evidence that there were impairments of her lower and upper extremities that at least had a loose nexus with the pain she complains of.

Therefore, at the third step of the *Luna* analysis, the ALJ considers a number of factors in determining whether claimant's complaints of pain are credible.[91] Those

**82.** Tr. 21

**83.** 834 F.2d 161, 163–64 (10th Cir.1987).

**84.** *See Kepler v. Chater,* 68 F.3d 387, 390 (10th Cir.1995).

**85.** Tr. 16, 194

**86.** Tr. 175

**87.** Tr. 17

**88.** *Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir.1993).

**89.** *Id.* (internal citations and quotations omitted).

**90.** *Luna,* 834 F.2d at 165.

**91.** *Thompson v. Sullivan,* 987 F.2d 1482, 1489 (10th Cir.1993).

factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.[92]

Applying those factors, the ALJ found that: there were inconsistencies in Plaintiff's statements regarding her ability for prolonged sitting. She testified she is able to sit for no more than 30 minutes to 1 hour; but in March 1998, she told Dr. Thompson that she could sit for 3 to 4 hours.[93] While the ALJ noted that there was no evidence in the record of any worsening in her condition that would explain this inconsistency, that is not entirely accurate. Plaintiff testified, and according to his clinical notes, also related to Dr. Thompson in March 1998 and August 1998, that her ability to sit, stand and walk varied with the weather; and her ability for prolonged sitting depended in part on whether she was sitting in a chair or her recliner.[94]

■■■ The ALJ also noted that based on Plaintiff's account, the range of her routine daily activities involved "caring for several small children, cooking and housework as well as some recreational activity." [95] But, the ability to perform a limited daily routine does not establish the absence of disability.[96] Therefore, an ALJ "may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." [97] Nor should the ALJ's finding that Plaintiff occasionally goes camping,[98] serve to establish the absence of disability, for sporadic diversions are not very probative of RFC, just as sporadic work is not.[99] Although Plaintiff cares for three children between the ages of 7 and 13, and cooks and performs some household tasks, she is limited by her inability to stoop or reach down; by back, leg and arm pain after a period of activity; and by her need to take 10 to 15 minute breaks while cooking and doing household tasks. And, this is on her "good days." On her bad days she is able to do much less, and is primarily limited to sitting in her recliner. Such limited and sporadic performance of daily activities does not negate the possibility of disability.[100]

The ALJ also noted that the post-surgery treatment of the fractures had been relatively conservative; and that Plaintiff had been able to obtain relief from pain with over the counter medications and did not need stronger prescription medicine for pain relief more than 2–3 times a month.[101] But, the ALJ neglected to mention that Plaintiff had been plagued by

**92.** *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995) (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir.1991)).

**93.** Tr. 174

**94.** Tr. 174, 191, 211–212

**95.** Tr. 18

**96.** *Talbot v. Heckler*, 814 F.2d 1456 (10th Cir. 1987).

**97.** *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir.1993).

**98.** Tr. 15

**99.** *Martin v. Bowen*, 652 F.Supp. 1270 (D.Kan.1987).

**100.** *Frey v. Bowen*, 816 F.2d 508, 516–17 (10th Cir.1987)

**101.** Tr. 17–18

continuous pain that was not always relieved by pain medication. In February 1998, Dr. Jones prescribed Voltaren for pain in Plaintiff's knee and heel, and when he saw her again in May 1998, he switched her to Daypro because she obtained no relief from the Voltaren.[102] In an undated statement, Plaintiff stated that she was taking 2 tablets of Daypro every day and 1–2 tablets of Ultram every 6 hours as needed, both prescribed by Dr. Jones. She also indicated that she takes Advil as needed for pain.[103] In March 1998, Plaintiff complained to Dr. Thompson that she was up 3–4 times a night with pain; and in August 1998 she complained to him that she was up twice a night with pain.[104]

The ALJ did not mention that Dr. Thompson noted in his August 1998 examination of Plaintiff that while her reflex, sensation and motor function findings were within normal limits, Plaintiff demonstrated severe difficulty with hopping, squatting and heel-to-toe walking, and she exhibited moderate to severe difficulty with any orthopedic maneuver.[105]

On the other hand, there is evidence supporting the ALJ's determination that Plaintiff's claims are not entirely credible. Dr. Jones, the treating physician, had opined that Plaintiff's heel and femur fractures objectively supported no more than slight pain and that no physician had placed exertional restrictions on Plaintiff below the sedentary level. Furthermore, Dr. Jones had monitored Plaintiff for a year after her surgery; and Dr. Jones had found that she was healing satisfactorily and could increase her activities.[106] It is proper for the ALJ to consider the extent of the objective evidence in determining whether it is consistent with plaintiff's subjective evidence.[107]

 Although the ALJ must consider plaintiff's subjective complaints, the ALJ does not have to accept them as true.[108] A credibility determination is left to the ALJ as the trier of fact, and the ALJ's credibility findings are traditionally given particular deference.[109] The ALJ's credibility findings must be affirmed if they are supported by substantial evidence on the record as a whole.[110] Because there was some basis in the record for the ALJ to disbelieve Plaintiff's claims of pain, the Court defers to the ALJ's conclusion in that regard.[111] Unless there is a conspicuous absence of credible evidence to support the ALJ's conclusion, which there is not, the Court should treat the ALJ's credibility determination as binding upon review.[112]

---

102. Tr. 145–147

103. Tr. 106

104. Tr. 174, 191

105. Tr. 191–94

106. Tr. 145–147

107. *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir.1990) (medical records must be consistent with nonmedical testimony as to severity of pain).

108. *Arensman v. Apfel*, 40 F.Supp.2d 1249, 1254 (D.Kan.1999).

109. *Williams v. Bowen*, 844 F.2d 748, 755 (10th Cir.1988) (citing *Beavers v. Secretary of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir.1978)).

110. *Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir.1990).

111. *Ward v. Apfel*, 65 F.Supp.2d 1208 (D.Kan. 1999).

112. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir.1992)

■ Therefore, the Court concludes that the ALJ did not err in concluding that Plaintiff's subjective claims of pain were not entirely credible, but credible only to the extent that her RFC allowed her to stand up to 2 hours out of an 8 hour workday and sit for the entire 8 hour workday.

## Conclusion

Reviewing the record as a whole, the Court concludes that there is no substantial evidence to support the Commissioner's determination that Plaintiff is not disabled.

**IT IS THEREFORE ORDERED BY THE COURT** that this case be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

**IT IS FURTHER ORDERED THAT UPON REMAND,** the Commissioner shall: (1) include Plaintiff's right arm tendinitis and carpal tunnel syndrome in his consideration of her severe impairments and RFC; and (2) include Plaintiff's manipulative limitations and complete inability to stoop in his consideration of her RFC.

IT IS SO ORDERED.