Randy VANATTA, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. 03–4217–JAR.

United States District Court,
D. Kansas.

July 30, 2004.

Joan H. Deans, Deans Law Office, Raytown, MO, for Plaintiff.

David D. Plinsky, Office of United States Attorney, Topeka, KS, for Defendant.

### MEMORANDUM & ORDER

ROBINSON, District Judge.

Plaintiff Randy Vanatta brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of Defendant Commissioner of Social Security's denial of his application for a period of disability and disability insurance benefits under Title II of the Social Security Act (Act) and supplemental security income under Title XVI of the Act. According to plaintiff, defendant failed to properly assess plaintiff's credibility and erroneously determined plaintiff's residual functional capacity and resulting ability to work. As explained in more detail below, the Court rejects each of plaintiff's arguments and affirms defendant's decision.

### I. Procedural Background

On July 24, 2001, plaintiff protectively filed his applications for a period of disability, disability insurance benefits, and supplemental security income, claiming disability since February 1, 2001, due to: back problems; shortness of breath; heat intolerance; anxiety; dizziness; and loss of feeling in his arms, legs, and face. The application was denied both initially and upon reconsideration. At plaintiff's request, an administrative law judge (ALJ) held a hearing on May 14, 2003, at which both plaintiff and his counsel were present. On June 6, 2003, the ALJ rendered a decision denying all benefits, on the basis that plaintiff was not under a "disability" as defined by the Act. Plaintiff's request for review by the Appeals Council was denied on October 30, 2003. Thus, the ALJ's decision is the final decision of defendant.

### II. Standard of Review

■ Judicial review under 42 U.S.C. § 405(g) is limited to whether defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the correct legal standards.[1] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2]

---

1. *See White v. Massanari,* 271 F.3d 1256, 1257 (10th Cir.2001) (citing *Castellano v. Sec'y of Health & Human Services,* 26 F.3d 1027, 1029 (10th Cir.1994)).

2. *Id.* (quoting *Castellano,* 26 F.3d at 1028).

In the course of its review, the court may not reweigh the evidence or substitute its judgment for that of defendant.[3]

## III. Relevant Framework for Analyzing Claim of Disability and the ALJ's Findings

"Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ...."[4] The Social Security Act further provides that an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...."[5]

The Social Security Administration has established a five-step sequential evaluation process for determining whether a claimant is disabled,[6] and the ALJ in this case followed the five-step process. If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.[7] Step one determines whether the claimant is presently engaged in substantial gainful activity.[8] If he is, disabili-

ty benefits are denied.[9] If he is not, the decision maker must proceed to the second step.[10] Here, the ALJ determined that plaintiff was not engaged in substantial gainful activity and, thus, properly proceeded to the second step.

The second step of the evaluation process involves a determination of whether "the claimant has a medically severe impairment or combination of impairments."[11] This determination is governed by certain "severity regulations," is based on medical factors alone, and consequently, does not include consideration of such vocational factors as age, education, and work experience.[12] Pursuant to the severity regulations, the claimant must make a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities.[13] If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits.[14] If, on the other hand, the claimant presents medical evidence and makes the de minimis showing of medical severity, the decision maker proceeds to step three.[15] The ALJ in this case concluded that plaintiff satisfied the severity requirement based on the following impairments: status/post left lung thoractomy, anxiety, dysthymia, and

**3.** *Id.*

**4.** *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir.1988) (quoting 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (1982)).

**5.** *Id.* (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (1982 & Supp. Ill 1985)).

**6.** *See id.* (citing 20 C.F.R. §§ 404.1520, 416.920 (1986)).

**7.** *Id.*

**8.** *Id.*

**9.** *Id.*

**10.** *Id.*

**11.** *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 140–41, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)).

**12.** *Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c) (1986)).

**13.** *Id.* at 750–51 (citing 20 C.F.R. §§ 404.1521(b), 416.921(b) (1986)).

**14.** *Id.* at 751.

**15.** *Id.*

status/post hernia repair. However the ALJ determined there was no evidence of a severe back impairment. Thus, the ALJ proceeded to step three.

In step three, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." [16] If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits.[17] If not, the evaluation proceeds to the fourth step, where the claimant must show that the "impairment prevents [the claimant] from performing work he has performed in the past." [18] If the claimant is able to perform his previous work, he is not disabled.[19] With respect to the third step of the process in this case, the ALJ determined that plaintiff's impairments were not listed or medically equivalent to those listed in the relevant regulations. At the fourth step, the ALJ concluded that plaintiff was not disabled because he was able to perform his past relevant work as a parts clerk.

Although the ALJ determined plaintiff was not disabled, he proceeded to the fifth and final step of the sequential evaluation process-determining whether the claimant has the residual functional capacity (RFC) "to perform other work in the national economy in view of his age, education, and work experience." [20] An ALJ is allowed to make a step five determination even if he finds that plaintiff is not disabled at step four.[21] At this point, the ALJ properly shifted the burden of proof to defendant to establish that plaintiff retains the capacity "to perform an alternative work activity and that this specific type of job exists in the national economy." [22] At this step, the ALJ also concluded that plaintiff was not disabled, a conclusion that rested on a finding that plaintiff could perform a significant number of jobs in the national, state, and local economies, including inventory clerk and order clerk.

## IV. Analysis of Plaintiff's Specific Arguments

Plaintiff contends that the ALJ erred in assessing plaintiff's credibility and in determining plaintiff's residual functional capacity and resulting ability to work. The Court addresses each of these arguments in turn.

### A. Assessment of Plaintiff's Credibility

In determining whether a claimant's subjective complaints are credible, the ALJ must consider the objective medical evidence and such factors as: the claimant's persistent attempts to find relief and his willingness to try any treatment prescribed; whether the claimant has regular contact with a doctor; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication.[23] The ALJ must give specific

---

**16.** *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d) (1986); *Bowen v. Yuckert,* 482 U.S. at 141, 107 S.Ct. 2287).

**17.** *Id.*

**18.** *Id.* (citing 20 C.F.R. §§ 404.1520(e), 416.920(e) (1986); *Bowen v. Yuckert,* 482 U.S. at 141, 107 S.Ct. 2287).

**19.** *Id.*

**20.** *See id.* (quoting *Bowen v. Yuckert,* 482 U.S. at 142, 107 S.Ct. 2287).

**21.** *Murrell v. Shalala,* 43 F.3d 1388 (10th Cir.1994).

**22.** *See Williams,* 844 F.2d at 751 (citations omitted); *accord White,* 271 F.3d at 1258 (at fifth step, burden of proof shifts to Commissioner to show that claimant retains the functional capacity to do specific jobs).

**23.** *Barnett v. Apfel,* 231 F.3d 687, 690 (10th Cir.2000) (citing *Luna v. Bowen,* 834 F.2d 161, 165–66 (10th Cir.1987)).

reasons for rejecting a claimant's subjective complaints.[24] Ultimately, credibility determinations "are peculiarly the province of the finder of fact," and should not be upset if supported by substantial evidence.[25]

■ Although, as Plaintiff suggests, there was some evidence weighing in favor of his credibility, the ALJ relied on substantial evidence that weighed against plaintiff's credibility. Plaintiff notes that the ALJ failed to mention his steady work history prior to his disability claims, a factor which could weigh in favor of his credibility.[26] And, as plaintiff notes, there was evidence that during doctor visits he complained of shortness of breath and hyperventilation; and two of his doctors attributed his hyperventilation to anxiety. Furthermore, the consultative physician, Dr. Barnett, noted that plaintiff's description of symptoms was generally consistent with panic disorder. And Dr. Mintz, who performed a mental status exam, noted that plaintiff was sincere, depressed with a flat affect, anxious, enjoyed work, and had a positive work attitude.

But the ALJ determined that there was more substantial evidence weighing against plaintiff's credibility. The Court cannot reweigh the evidence on review,[27] and must give deference to the ALJ's determination of credibility.[28] The ALJ considered not only other objective medical evidence that contradicted plaintiff's complaints, but also considered plaintiff's activities of daily living, and the fact that plaintiff had received unemployment benefits during his alleged period of disability.

Plaintiff argues that his limited daily routine of activities did not evidence an ability to work. He argues that courts have found similar activities insufficient to discredit a claimant's credibility, citing *Piatt v. Barnhart.*[29] In *Piatt*, this Court determined that claimant's caring for three children between the ages of 7 and 13, cooking, and performing some household tasks, was not substantial evidence justifying the ALJ's finding that claimant was not credible.[30] But in *Piatt*, there was evidence that the claimant's activities were limited by her impairments such as an inability to stoop or reach down and by her need to take 10 to 15 minute breaks.[31] There was also evidence that on the claimant's bad days, she was able to do much less than those activities mentioned.[32]

In this case, there was no evidence that plaintiff had good or bad days; and there was no evidence of any limitation in daily activities, other than plaintiff's inability to use the computer more than 20 minutes at a time. The ALJ noted that::

> [Plaintiff] lives alone and is independent in travel and self care. He takes care of his children, cooks, uses the computer and internet, mows the lawn, and does a full range of household chores. He told Dr. Barrett [sic] that he enjoys playing the guitar and keyboard. He attends his children's school events and shops for their food and clothing. He goes to his brother's gas station on a daily basis

---

24. *White v. Massanari,* 271 F.3d 1256, 1261 (10th Cir.2001) (citing *Kepler v. Chater,* 68 F.3d 387, 390–91 (10th Cir.1995)).

25. *Id.* (citing *Kepler,* 68 F.3d at 390–91).

26. *Bean v. Chater,* 77 F.3d 1210, 1213 (10th Cir.1995) (stating that it is proper for the ALJ to use a claimant's *sporadic* prior work history against him).

27. *See White,* 271 F.3d at 1257.

28. See *id.* at 1261.

29. 225 F.Supp.2d 1278, 1291 (D.Kan.2002).

30. *Id.*

31. *Id.*

32. *Id.*

to play cards and visit. The claimant told his psychiatrist that he wanted to attend junior college, but did not have the funds.

The ALJ appropriately found that while these activities did not necessarily translate into work capacity, it was evident that plaintiff's symptoms did not impact his daily activities, suggesting that plaintiff retained the stamina for full time employment. This evidence, along with the other evidence the ALJ relied on, amounted to substantial evidence for the ALJ's credibility determination.

### B. Plaintiff's RFC and Resulting Ability to Perform Work

Plaintiff argues that the transcript of the vocational expert's (VE) testimony at the hearing is too incomplete to allow for judicial review of the ALJ's decision that he could return to his past work and other jobs in the economy. In determining at step four whether plaintiff could return to his past work, the ALJ completed the required three phases: (1) he evaluated plaintiff's physical and mental RFC; (2) based on plaintiff's testimony, he determined the demands of plaintiff's past work as a parts clerk; and (3) relying on the VE's testimony, he determined whether plaintiff had the ability to meet the demands found in phase two despite the limitations found in the phase one determination of RFC. The ALJ concluded that plaintiff could perform his past work as a parts clerk.[33] The ALJ made specific findings as required at each of these phases.[34] Plaintiff does not necessarily challenge the ALJ's analysis. Rather, plaintiff questions whether the hearing transcript actually evidences testimony from the VE that plaintiff could return to his past work. Plaintiff notes that the hearing transcript contains many portions where the transcriber noted the testimony as "inaudible."

Despite the inaudible portions of the transcript, however, the Court can glean what RFC the ALJ asked the VE to consider when answering his questions. The specifics of the RFC were contained in an exhibit that the ALJ and the VE specifically referred to during the testimony. This exhibit is in the record, and thus evidences what RFC the VE was referring to. The ALJ's question to the VE asking whether plaintiff could perform any of his past work is fully transcribed. The VE's answer is partially transcribed, "Yes. The [INAUDIBLE]." Thus, the transcript records the VE's testimony that plaintiff could return to his past work, although it does not record the VE's apparent identification of the specific past job or work he was referencing.

Plaintiff also contends that the inaudible responses in the hearing transcript require the Court to remand the case for a proper development of the hearing testimony regarding his ability to perform other work in the economy at step five. During this line of questioning, the transcriber was unable to discern what the ALJ asked, but the transcriber discerned material portions of the VE's responses to the ALJ questions. The VE testified about the number of available inventory clerk positions. The ALJ found that plaintiff could perform the inventory clerk position and incorporated the number the VE testified to, as the number of such positions in the economy.

The VE also testified to a number of jobs available for another position; the VE's identification of that position is not discernible from the transcript. But, it is apparent from the ALJ's opinion, which incorporates the VE's testimony about the

---

**33.** *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir.1996) (describing the three phases at step four).

**34.** *See id.*

number of positions, that the VE was testifying about the position of order clerk. The ALJ thus found that plaintiff could perform work as an order clerk, incorporating the VE's testimony about the number of such positions in the economy.

■ Plaintiff has not stated how he is prejudiced by this incomplete transcript.[35] It is clear from the testimony that, in the VE's opinion, plaintiff could return to his past work and could perform other work in the national, state, and local economies. Substantial evidence supported the ALJ's determinations that led to the VE's testimony.[36] Furthermore, to the extent the transcript is incomplete, in rendering his opinion, the ALJ obviously relied on what he heard at the hearing, and nothing in the transcript contradicts the ALJ's findings.[37] Plaintiff does not contend that the VE did not respond as the ALJ says he did. Plaintiff does not contend that the VE testified that he could *not* return to his past work or could *not* perform other work. Although it is unfortunate that the transcript contained so many references to "inaudible" testimony, plaintiff did not prove that the hearing testimony was not as the ALJ characterized it in his opinion, nor did he prove that he was prejudiced by the deficiencies in the transcript. It is the ALJ's duty to resolve conflicts in the record, and the ALJ in this case did that and supported his determination with substantial evidence. Because the ALJ's decision

is supported by substantial evidence, and he followed all procedures prescribed by law, the Court must uphold his decision.

In sum, after carefully reviewing the record in this case and considering all of plaintiff's arguments in light of the record, the Court concludes that substantial evidence supports defendant's decision to deny plaintiff's application for disability benefits and that no deviation from established legal standards occurred.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for judgment is **denied** and defendant's decision denying plaintiff disability benefits is affirmed.

---

35. *See Earls v. Callahan,* No. 96–1200, 1997 WL 624859, *5 (D.Kan. Sept. 8, 1997) ("Remand for development of the administrative record is not necessary where a claimant was represented by counsel, was treated fairly, and fails to show he has been prejudiced.").

36. *See Moore v. Chater,* No. 95–2185, 1996 WL 262887, *1 (10th Cir. May 17, 1996) ("[T]he existence of several inaudible gaps has not rendered the ALJ's decision unreviewable. The Secretary established, through the testimony of the vocational expert (VE), that claimant remained capable of performing jobs

existing in significant numbers in the national economy. Substantial evidence supported the ALJ's factual findings underlying the VE's testimony.").

37. *See Andres v. Bowen,* 870 F.2d 453, 455–56 (8th Cir.1989) (stating that the ALJ's written decision in effect reconstituted the missing portion of the transcript because the ALJ discussed the information plaintiff said was missing; also the court stated that there was no indication that the missing transcript would aid the plaintiff or "in any way [prevent] fair judicial review.").